

COMMON PLEAS COURT

2023 JUL 21  PM 3: 12

# Medina County Court of Common Pleas

FILED
DAVID B. WADSWORTH
MEDINA COUNTY
CLERK OF COURTS

## CASE DESIGNATION FORM

FIRE-DEX, LLC

*Plaintiff*

Case No. **2023CIV0549**

VS.

ADMIRAL INSURANCE COMPANY

Judge:  **JOYCE V. KIMBLER, JUDGE**

*Defendant*

---

Has this case been previously filed & dismissed?   Yes ☐   No ☒

Case #: _____   Judge: _____

Is this case related to any cases now pending or previously filed?   Yes ☐   No ☒

Case #: _____   Judge: _____

Is the Plaintiff a debtor in bankruptcy?   Yes ☐   No ☒

Case #: _____   Court: _____

---

**CIVIL CLASSIFICATIONS:** *Place an (X) in ONE Classification Only.*

_____ **Professional Torts**

_____ **Product Liability:**

_____ **Other Torts, including Personal Injury**

_____ **Workers Compensation**

_____ **Foreclosures**

_____ **Administrative Appeals**

___X___ **Other Civil**

*I certify that the within case is not related to any now pending or previously filed, except as noted above.*

Buckingham, Doolittle & Burroughs, LLC

Justin S. Greenfelder, Esq.

*Attorney of Record (Print or type)*

4277 Munson Street NW, Canton, OH 44718

*Address*

(330) 492-8717

*Telephone*

*Signature*

COMMON PLEAS COURT

2023 JUL 21  PM 3: 12

IN THE COURT OF COMMON PLEAS
MEDINA COUNTY, OHIO

FILED
DAVID B. WADSWORTH
MEDINA COUNTY
CLERK OF COURTS

FIRE-DEX, LLC )
780 South Progress Drive )
Medina, Ohio 44256 )
)
    Plaintiff )
)
vs. )
)
ADMIRAL INSURANCE COMPANY )
1000 Howard Boulevard, Suite 300 )
P.O. Box 5430 )
Mount Laurel, New Jersey 08054 )
)
    Defendant )
)
)
)

CASE NO.:

**2023 C V 0549**

JUDGE

JOYCE V. KIMBLER, JUDGE

**COMPLAINT**

**(Jury Demand Endorsed Hereon)**

Now comes Plaintiff, Fire-Dex, LLC, by and through counsel, and for its Complaint against

Defendant Admiral Insurance Company, states as follows:

### PARTIES

1.    Plaintiff. Fire-Dex, LLC ("Plaintiff" or "Fire-Dex"), is Delaware limited liability

company whose sole member is an Ohio citizen. Fire-Dex has its principal place of business in

Medina County, Ohio

2.    Defendant Admiral Insurance Company ("Defendant" or "Admiral") is a Delaware

corporation with its principal places of business in New Jersey and Arizona. Admiral is licensed

with the Ohio Department of Insurance to write and sell insurance policies in the State of Ohio and

has agents located throughout Ohio authorized to write and sell insurance policies on Admiral's

behalf in the State of Ohio, including Medina County, Ohio.

## JURISDICTION AND VENUE

3.      The court has jurisdiction over the subject matter of this claim and has personal jurisdiction over Defendant as Defendant (a) contracted with Plaintiff and issued a policy of insurance covering Plaintiff's business located in Medina County, Ohio, (b) was required to perform its obligations to Plaintiff in Medina County, Ohio, and (c) transacts significant business in Medina County, Ohio.

4.      Venue is proper in this Court as Medina County, Ohio, is the county in which (a) all or part of the claim for relief arose, and (b) Defendant conducted activity that gives rise to Plaintiff's claim for relief.

5.      The present action is not removable to federal court based on diversity of citizenship as the U.S. Court of Appeals for the Sixth Circuit has ruled that federal courts lack subject-matter jurisdiction over the novel insurance law issues in this matter. *See Admiral Insurance Co. v. Fire-Dex, LLC*, Case No. 22-3992, 2023 WL 3963623 (6th Cir., June 13, 2023), attached hereto as **Exhibit 1**.

## FACTUAL BACKGROUND

6.      This insurance coverage dispute arises out of the developing national story regarding a group of chemicals known as per- and polyfluoroalkyl substances (also known as "PFAS").

7.      Fire-Dex is headquartered in Medina, Ohio, and is a leading manufacturer of personal protective equipment ("PPE") for firefighters, comprised primarily of turnout gear ("turnouts") worn by firefighters to protect them while fighting fires. Fire-Dex also manufactures accessories including boots, hoods, gloves, and helmets.

2

8.     Fire-Dex does not manufacture PFAS-containing compounds or insert PFAS or any PFAS-containing chemicals into any of these products. However, it is alleged that some of the components used in the manufacture of these products – which Fire-Dex purchases from other material suppliers – may contain some amounts of PFAS.

9.     Fire-Dex's products comply with all applicable governmental regulations and industry standards.

10.     Fire-Dex does not manufacture or sell any fire suppression foam, including Class B firefighting foams.

11.     Fire-Dex purchased two commercial general liability insurance policies from Admiral covering the policy years of January 1, 2014 through January 1, 2016 (collectively, the "Policies"). True and accurate copies of Policy Nos. CA000018694-01 and CA000018694-02 are attached and incorporated herein as **Exhibits 2 and 3**, respectively.

12.     The Policies generally provide occurrence-based coverage to Fire-Dex for bodily injury and property damage suffered by third parties with limits of $1,000,000 per occurrence and $2,000,000 in the aggregate.

13.     Fire-Dex timely paid all premiums associated with the Policies which remained in effect during the entirety of the periods set forth therein.

14.     On or about February 15, 2022, three lawsuits were filed naming Fire-Dex as one of many defendants. These lawsuits were brought by firefighters and their spouses alleging bodily injury resulting from exposure to PFAS in either their turnouts or firefighting foam. These lawsuits (collectively, the "Underlying Lawsuits") are:

a.     *Marchetti, et al. v. 3M Company, et al.*, Case No. 1:22-cv-10251 (D. Mass.), with the complaint attached as **Exhibit 4**.

3

b. *Nordby, et al. v. 3M Company, et al.*, Case No. 22CV00701 (Alameda, CA, Superior Ct.), with the complaint attached as **Exhibit 5**.

c. *Gibson v. 3M Company, et al.*, Case No. 2284CV00353 (Suffolk, MA, Superior Ct.), with the complaint attached as **Exhibit 6**.

15. The plaintiffs in the Underlying Lawsuits (collectively, the "Underlying Plaintiffs") allege that Fire-Dex and the other defendants manufactured, sold, or distributed products containing PFAS. The Underlying Plaintiffs further allege that they or their spouses contracted various cancers caused by exposure to PFAS.

16. Fire-Dex immediately and timely tendered the Underlying Lawsuits to each of its primary and excess insurers since 1997, including Admiral, requesting these insurers provide a defense and indemnity in the Underlying Lawsuits.

17. Each of Fire-Dex's primary general liability insurers during this period, with the exception of Admiral, responded promptly and agreed to defend Fire-Dex in the Underlying Lawsuits subject to a reservation of rights.

18. The Underlying Lawsuits were subsequently transferred and consolidated in federal multidistrict litigation pending in the U.S. District Court for the District of South Carolina. *In re Aqueous Film-Forming Foams (AFFF) Product Liability Litigation*, No. 2:18-mn-02873 (D.S.C.) (the "PFAS MDL").

19. On May 19, 2022, Fire-Dex filed a General Denial and Affirmative Defenses applicable to each of the Underlying Lawsuits in the PFAS MDL.

20. Despite the fact that Admiral had not yet provided Fire-Dex with any notice if its decision whether to provide a defense in the Underlying Lawsuits, on June 21, 2022, Admiral filed a declaratory judgment action in the U.S. District Court for the Northern District of Ohio, Case No. 1:22-cv-01087-PAB (the "Federal Litigation"). Admiral sought a declaration from the federal

4

court that it had no duty to defend Fire-Dex in the Underlying Lawsuits based on four policy exclusions that it alleged defeated coverage: (a) the occupational disease exclusion, (b) the "prior existing damages" exclusion, (c) the pollution exclusion, and (d) the punitive damages exclusion.

21.     On June 23, 2022, two days after filing the Federal Litigation and prior to service of process, Fire-Dex received an undated letter from Admiral's outside counsel which denied coverage on the same grounds set forth in the Federal Litigation.  (A true and accurate copy of this letter is attached and incorporated as **Exhibit 7.**)

22.     Admiral's primary reason for denying coverage in this letter is the existence of an "Occupational Disease Exclusion" in the Policies which states:

> It is agreed that there is no coverage afforded under this policy for any "bodily injury" to **any** individual resulting from any occupational or environmental disease arising out of any insured's operations, completed operations, or products.

(See Exhibits 2 and 3, Form AD 67 08 10 13; boldface in original.)

23.     The phrase "occupational or environmental disease" is not defined in the Policies.

24.     Admiral contends that this exclusion broadly eliminates coverage under the Policies because the Underlying Plaintiffs alleged that they contracted cancer from exposure to Fire-Dex's turnouts during the course of their occupation as firefighters.

25.     Admiral's position is contrary to the established definition of the term "occupational disease" as a term of art referring to a claim brought by an employee against his or her employer.

26.     In its decision to deny coverage, Admiral failed to follow settled Ohio law which required any doubt or ambiguity in the language of an insurance policy to be construed in favor of the insured, and that exclusions be construed narrowly such that the insurer's interpretation of the exclusionary language will only defeat coverage if *it is the only* reasonable interpretation.  At

minimum, there is an ambiguity in the application of this exclusion to non-employees of Fire-Dex which must be construed in favor of coverage.

27. The federal district court declined to exercise jurisdiction over the Federal Litigation and dismissed the action. Utilizing the appropriate test to determine federal jurisdiction over declaratory judgment actions, the district court held that there were important federalism concerns weighing against a federal court issuing a declaration in that setting. (See Memorandum Opinion and Order, October 31, 2022, attached as **Exhibit 8**.)

28. Admiral filed an appeal of the district court's decision. On June 13, 2023, the U.S. Court of Appeals for the Sixth Circuit affirmed the district court's judgment and held that the novel insurance law issues raised must first be decided by a state court. (See Exhibit 1.)

29. Following the filing of the Underlying Lawsuits, additional lawsuits have been filed by firefighters and their spouses making nearly identical allegations. As of the date of this filing, Fire-Dex has been named as a defendant in 91 lawsuits (hereinafter included within the defined term, "Underlying Lawsuits"). Nearly all of these additional Underlying Lawsuits have been made part of the PFAS MDL, and it is anticipated that the remaining lawsuits will be transferred to the PFAS MDL in the normal course.

30. None of the Underlying Lawsuits have been made part of any bellwether case in the PFAS MDL and, aside from some limited initial paper discovery, each is generally inactive.

31. Fire-Dex has timely provided notice to Admiral of each of these lawsuits and requested a defense and indemnity. To date, Admiral has issued six additional letters to Fire-Dex denying coverage on the same grounds as those set forth in its letter regarding the initial Underlying Lawsuits (See Exhibit 7).

## COUNT ONE
## DECLARATORY JUDGMENT

32.    Fire-Dex reincorporates all of the allegations and statements contained in the foregoing paragraphs, as if fully rewritten herein.

33.    The Policies are valid and enforceable insurance contracts between Fire-Dex and Admiral.

34.    An actual and substantial controversy exists between Fire-Dex and Admiral as to Admiral's duty under the Policies to provide a defense and indemnity to Fire-Dex in the Underlying Lawsuits.

35.    Fire-Dex and Admiral are interested parties as they have a personal stake in the outcome of this declaratory judgment action and have adverse legal interests.

36.    Fire-Dex faces imminent injury that is concrete, particularized, and can be redressed by declaratory relief.

37.    The Policies provide that Admiral must provide a defense to Fire-Dex and indemnify Fire-Dex from any damages Fire-Dex must pay because of "bodily injury" to which the Policies apply.

38.    The Underlying Lawsuits constitute a "suit" seeking damages for "bodily injury" as defined in the Policies. Fire-Dex gave prompt notice of each of the Underlying Lawsuits to Admiral and has complied with all conditions set forth in the Policies, including the timely payment of all premiums.

39.    There is an actual and substantial controversy between the parties concerning whether coverage under the Policies is excluded by the "Occupational Disease Exclusion." The Policies do not define the term "occupational disease." Thus, the term must be given its ordinary meaning.

7

40.     An "occupational disease" is a technical term of art which is limited to disputes between employers and employees.  Historically, many states did not include "occupational diseases" as covered under its workers' compensation statutes, instead only covering accidental injuries suffered in the course of an employee's employment.  In order to provide coverage for slow developing diseases contracted as a result of employment, many states adopted separate "occupational disease acts" or (like Ohio) amended its workers' compensation statutes to include occupational disease claims.

41.     While many states have broadened their workers' compensation statutes to include occupational disease claims, some states' laws still do not cover all such claims and workers continue to bring common law claims against their employers.  Insurers have responded to these "gaps" by including "stop gap liability endorsements" in their commercial general liability policies.  Such an endorsement is included in Admiral's Policies and provides additional coverage to Fire-Dex for "'bodily injury' caused by an accident or disease to any employee of yours arising out of and in the course of their employment..." (See Policies, Form AD 66 21 04 95, the "Stop Gap Endorsement.")  This endorsement includes exclusions for any obligation under "*any workers' compensation or occupational disease law*." (*Id*.; emphasis added.)

42.     The Policies use the term "occupational disease" in the Stop Gap Endorsement in the context of employment claims.  Accordingly, the reasonable expectation of a policyholder like Fire-Dex is that this term is defined in the same manner in the Occupational Disease Exclusion such that only "occupational disease" claims brought against Fire-Dex by its employees are excluded from coverage.  A reasonable policyholder like Fire-Dex would not expect the term "occupational disease" to be defined and applied differently and more broadly in two different sections of the Policies which are intended to work in tandem.

8

43. When Admiral sold the Policies to Fire-Dex, it knew that Fire-Dex was a manufacturer of protective clothing sold to firefighters for use in their occupation as firefighters. (See Policies, Common Policy Declarations Page.) Commercial general liability policies, like the Policies, are intended to provide coverage to policyholders like Fire-Dex for "bodily injury" claims brought by these third parties as users of Fire-Dex's products. Exclusions related to workers' compensation, employers' liability, and occupational diseases are intended to exclude claims brought by a policyholder's employees, while preserving such claims brought against the policyholder by non-employees.

44. Admiral seeks an interpretation of the term "occupational disease" as used in the Occupational Disease Exclusion which is contradicted by its use elsewhere in the Policies and which does not comport with its definition as a technical term used in the context of employer-employee claims. To conclude that the Occupational Disease Exclusion applies to non-employees would render much of Fire-Dex's liability coverage under the Policies illusory and would eliminate a massive share of the bargained-for coverage of any manufacturer unfortunate enough to have a similarly worded exclusion in its general liability policies.

45. Alternatively, detaching the term "occupational disease" from the employment context renders the term ambiguous. Under Ohio law, when an insurer seeks to interpret an exclusion to defeat coverage, it must demonstrate that the insurer's construction *is the only one* that can be reasonably placed upon the language. As demonstrated herein, Fire-Dex's interpretation of the term "occupational disease" is reasonable. As a result, Admiral has a duty to provide a defense to Fire-Dex in the Underlying Lawsuits.

46. Alternatively, the issue of whether the Underlying Plaintiffs contracted cancer or other disease as a result of their employment, as opposed to other factors, has not been conclusively

9

determined in any of the Underlying Lawsuits. For example, some of the Underlying Plaintiffs may have been smokers or contracted cancer from other environmental or lifestyle factors. Since these facts remain in dispute, the possibility of coverage under the Policies exists and Admiral is obligated to provide a defense to Fire-Dex in the Underlying Lawsuits.

47. To the extent Admiral asserts that any other exclusion or limitation in the Policies authorizes it to deny coverage, Fire-Dex seeks a declaration that Admiral cannot meet its burden to prove the application of any such exclusion including, without limitation, the "Total Pollution Exclusion" (See Policies, Form CG 21 55 09 99).

48. Fire-Dex requests a declaration that Admiral is obligated to (a) defend Fire-Dex in the Underlying Lawsuits, and (b) indemnify Fire-Dex for any damages Fire-Dex is legally obligated to pay to the Underlying Plaintiffs in the Underlying Lawsuits.

## COUNT TWO
## BREACH OF CONTRACT

49. Fire-Dex reincorporates all of the allegations and statements contained in the foregoing paragraphs, as if fully rewritten herein.

50. The Policies are valid and enforceable insurance contracts between Fire-Dex and Admiral.

51. Fire-Dex has performed all of its obligations pursuant to the Policies, including the timely payment of all premiums due and providing prompt notice of all Underlying Lawsuits, and is not in breach thereof.

52. Admiral has breached its obligations to Fire-Dex by refusing to defend and/or indemnify Fire-Dex in the Underlying Lawsuits.

10

53. As a direct and proximate result of Admiral's breach, Fire-Dex has suffered substantial damages, including attorneys' fees and other special damages, in an amount in excess of $25,000.00.

54. Fire-Dex is further entitled to an order of specific performance requiring Admiral to comply with its contractual duties under the Policies.

## COUNT III
## BAD FAITH

55. Fire-Dex reincorporates all of the allegations and statements contained in the foregoing paragraphs, as if fully rewritten herein.

56. Admiral has a duty to act in good faith in the handling, adjusting, investigating, and processing of a claim of its insured, Fire-Dex.

57. Admiral, through its agents, adjusters, attorneys, and investigators, breached its duty of good faith to Fire-Dex including, without limitation, refusing to defend and/or indemnify Fire-Dex from the claims in the Underlying Lawsuits without reasonable justification and failing to conduct a competent, complete, thorough, timely, and good faith investigation of Fire-Dex's claims.

58. Upon information and belief, Admiral failed to conduct a good faith investigation into Fire-Dex's claims and denied coverage despite its knowledge that it had a duty to defend and/or indemnify Fire-Dex from the claims alleged. Admiral denied this claim with malicious intent to cause Fire-Dex to incur unnecessary expenses in challenging this decision and forcing Fire-Dex to defend against the Federal Litigation. Upon information and belief, Admiral follows a pattern and practice of denying claims under the same or similar circumstances that it knows it should cover, thereby making the purported coverage provided under its insurance policies illusory and the acceptance of premiums for the purchase of said insurance to be unjust.

11

59.     Admiral continued to act maliciously by taking spurious positions in the Federal Litigation, including pursuing an unnecessary appeal of the district court's dismissal, in an effort to avoid its responsibilities for as long as possible and causing its insured, Fire-Dex, to unnecessarily incur legal fees and expenses.

60.     Admiral's continued refusal to provide a defense and/or indemnity in the Underlying Lawsuits is without reasonable justification, fraudulent, intentional, reckless, and in bad faith.

61.     As a direct and proximate result of Admiral's bad faith, Fire-Dex has suffered substantial losses and incurred significant costs and attorneys' fees in an amount to be determined at trial.

62.     The actions and omissions of Admiral and its agents, adjusters, attorneys, and investigators demonstrate malice, aggravated or egregious fraud, oppression, or insult, and Admiral – as principal or master of its agents, adjusters, attorneys, and investigators – authorized, participated in, and ratified the actions or omissions of its agents, adjusters, attorneys, and investigators in this regard.

63.     Fire-Dex prays for judgment on this count in an amount in excess of $100,000 in compensatory damages, and an amount in excess of $100,000 in punitive damages, the exact amount to be determined by the trier of fact, plus interest, costs, and attorneys' fees as allowed by law.

WHEREFORE, Plaintiff, Fire-Dex, LLC, demands judgment on its Complaint against Defendant Admiral Insurance Company as follows:

A.     For a declaratory judgment that (i) Admiral has not and cannot prove the application of any exclusion or limitation under the Policies, (ii) Admiral owes Fire-Dex a duty to fully defend

12

all claims made against Fire-Dex in the Underlying Lawsuits, (ii) Admiral owes Fire-Dex a duty to indemnify Fire-Dex for all sums Fire-Dex may be held legally liable to pay as damages in the Underlying Lawsuits, and (iv) any other issue that may arise during the course of litigation that is a proper issue on which to grant declaratory relief;

B.     For compensatory damages against Admiral for its breach of contract in an amount in excess of $25,000 to be fully determined at trial;

C.     For compensatory and punitive damages against Admiral for its bad faith denial of coverage in an amount in excess of $100,000 each, to be fully determined at trial;

D.     For attorneys' fees and expenses in an amount to be proven at or before trial;

E.     For costs of this action;

F.     For pre- and post-judgment interest; and

G.     For any other legal or equitable relief to which Fire-Dex shows itself to be entitled or is otherwise appropriate or authorized by law.

Respectfully Submitted,

BUCKINGHAM, DOOLITTLE & BURROUGHS, LLC

Justin S. Greenfelder (Ohio Bar #0077924)
Jude B. Streb (Ohio Bar #0071529)
4277 Munson St. NW
Canton, Ohio 44718
Telephone: (330) 492-8717
Fax: (330) 492-9625
Email: jgreenfelder@bdblaw.com
          jstreb@bdblaw.com

**Attorneys for Plaintiff**
**Fire-Dex, LLC**

13

## JURY DEMAND ENDORSEMENT

Plaintiff hereby demands a trial by jury composed of the maximum number of jurors allowed by law.

_____

Justin S. Greenfelder (#0077924)
Jude B. Streb (#0071529)

## INSTRUCTIONS TO THE CLERK

The Clerk of Courts is instructed not to attempt service of the Summons and Complaint at the present time.  Plaintiff will request that Defendant waive service of Summons pursuant to Civ.R. 4.7.

_____

Justin S. Greenfelder (#0077924)
Jude B. Streb (#0071529)

4864-6429-9889, v. 1

14