UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FIRE-DEX, LLC, | ) | CASE NO.  1:23-cv-1612 |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| ADMIRAL INSURANCE CO., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Counter-Claimant. | ) | |

Before the Court is Plaintiff Fire-Dex LLC's ("Fire-Dex") Motion to Remand this case to the Medina County Court of Common Pleas.  (Doc. No. 8.)  This motion is fully briefed.  (Doc. Nos. 9, 10.)  For the reasons that follow, Fire-Dex's motion to remand is GRANTED in part and DENIED in part.

I.    **Background**

    **A. Factual Background and Previous Litigation**

Fire-Dex manufactures personal protective equipment for firefighters.  (Doc. No. 1-1 at 12, ¶ 7.)[1]  Fire-Dex purchased two commercial general liability insurance policies from Admiral Insurance Company ("Admiral"), which covered January 1, 2014 through January 1, 2016 (collectively the "Policies").  The Policies "generally provide occurrence-based coverage to Fire-Dex for bodily injury and property damage suffered by third parties with limits of $1,000,000 per occurrence and 2,000,000 in the aggregate."  (*Id.* at 13, ¶ 12.)

In February 2022, Fire-Dex was named as one of several defendants in lawsuits brought

_____

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

by firefighters and their spouses ("underlying lawsuits").  (*Id.* ¶¶ 13, 14.)  The plaintiffs in the underlying lawsuits "allege that Fire-Dex and the other defendants manufactured, sold, or distributed products containing" perfluoroalkyl and polyfluoroalkyl compounds, commonly known as "PFAS."  (*Id.* at 14, ¶ 15.)  These lawsuits were transferred and consolidated in a federal multidistrict litigation in the District of South Carolina.  (*Id.* ¶ 18 (citing *In re Aqueous Film-Forming Foams (AFFF) Prod. Liab. Litig.*, No. 2:19-mn-02873 (D.S.C.)).)  Fire-Dex tendered the underlying lawsuits to each of its insurers, including Admiral, requesting they provide a defense and indemnity.  (*Id.* ¶ 16.)  All of Fire-Dex's insurers, with the exception of Admiral, agreed to defend Fire-Dex.  (*Id.* ¶ 17.)

On June 21, 2022, Admiral filed a declaratory judgment action in this District.  (*Id.* at 14-15, ¶ 20 (citing *Admiral Ins. Co. v. Fire-Dex, LLC*, No. 1:22-cv-1087-PAB).)  Admiral sought a declaration that based on exclusions in the Policies, Admiral had no duty to defend or indemnify Fire-Dex for the underlying lawsuits.  (*Id.*)  Specifically, Admiral alleged four exclusions justified denying coverage: (a) the occupation disease exclusion; (b) the prior existing damages exclusion; (c) the pollution exclusion; and (d) the punitive damages exclusion.  (*Id.*)

On June 23, 2022, Admiral sent Fire-Dex a letter denying coverage.  (*Id.* ¶ 21.)  Fire-Dex alleges Admiral's primary reason for denying coverage was the "occupational disease exclusion," which reads: "It is agreed that there is no coverage afforded under this policy for any bodily injury to any individual resulting from any occupational or environmental disease arising out of any insured's operations, completed operations, or products."  (*Id.* ¶ 22.)  The Policies do not define "occupational or environmental disease."  (*Id.* ¶ 23.)

In response to Admiral's declaratory action, Fire-Dex filed a Rule 12(b)(1) motion to dismiss.  *See Admiral Ins. Co. v. Fire-Dex, LLC*, No. 1:22-CV-1087-PAB, 2022 WL 16552973,

at *2 (N.D. Ohio Oct. 31, 2022) ("*Admiral I*"). Fire-Dex argued the court should exercise its discretion under the Declaratory Judgment Act to decline jurisdiction. *Id.* at *3. Fire-Dex argued that the Sixth Circuit's five factor test, commonly referred to as the "*Grand Trunk*" factors, weighed against exercising jurisdiction. *Id.*

These five factors are:

(1) Whether the judgment would settle the controversy;

(2) Whether the declaratory judgment would serve a useful purpose in clarifying the legal relations at issue;

(3) Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) Whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) Whether there is an alternative remedy that is better or more effective.

*Id.* at *3-4 (citing *AmSouth Bank v. Dale*, 386 F.3d 763, 785 (6th Cir. 2004)).

According to Fire-Dex, the first three factors were neutral, and the last two factors warranted declining jurisdiction "due to federalism concerns." *Id.* at *4. In opposition, Admiral argued that there is "nothing novel about asking this Court to apply the term 'occupational disease'" and the court need not decline jurisdiction. *Id.*

In her opinion, Judge Barker evaluated each of the *Grand Trunk* factors and declined jurisdiction. *See id.* at *10. For the first factor, the court found that "[a] declaratory judgment would settle the controversy between Admiral and Fire-Dex, even if it does not resolve the firefighters' underlying claims against Fire-Dex" and thus weighed in favor of jurisdiction. *Id.* However, the court concluded that "this factor should be afforded little weight" because it was "ultimately outweighed by federalism considerations." *Id.* at *5.

For the second factor, the court found that "a declaratory judgment construing the

policies will establish whether Admiral is obligated to defend and/or indemnify Fire-Dex" and therefore weighed in favor of jurisdiction.  *Id.*  This factor was "outweighed by the fourth and fifth factors."  *Id.*

For the third factor, there was no evidence that Admiral raced to the courthouse to attain a more favorable opinion or otherwise had an improper motive in seeking declaratory judgment. *Id.*  Accordingly, this factor was neutral.

For the fourth factor, the court applied the Sixth Circuit's three sub factor test:

(1) Whether the underlying factual issues are important to an informed resolution of the case;

(2) Whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) Whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* at *6 (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 560 (6th Cir. 2008)).

The first sub factor weighed against exercising jurisdiction because "there are no cases in which any state court concluded that an occupational disease and/or pollution exclusion either does or does not obligate an insurer to defend and/or indemnify an insured for PFAS exposure-related claims."  *Id.* at *7.  The court concluded that "[i]n the interest of comity, [] it is better for Ohio state courts to address these issues first."  *Id.*

The second sub factor "weigh[ed] heavily against exercising jurisdiction."  *Id.* at *8.  As a general matter, the Sixth Circuit has offered "clear guidance that 'states are in a better position to resolve insurance issues governed by state law.'"  *Id.* at *9 (citing *Mass Bay. Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 Fed. App'x 431, 440 (6th Cir. 2018)).  While there is Ohio Supreme Court precedent on pollution exclusion clauses, these cases "involved residential, rather than industrial, pollution and carbon monoxide, rather than PFAS, exposure."  *Id.* at *8.

4

Accordingly, the court found that it was unlikely it "could reasonably predict how Ohio state courts would rule on this issue by relying on the definition of 'occupational disease.'" *Id.*

The third sub factor weighed against jurisdiction because "[t]here are no federal issues here, only novel issues of state insurance law." *Id.* at *9. Ultimately, the court held that the "use of a declaratory judgment would unnecessarily increase friction between the federal and state courts and improperly encroach on state jurisdiction by deciding unsettled issues of state insurance law." *Id.* The fourth factor "weigh[ed] heavily against exercising jurisdiction." *Id.*

For the fifth factor, "[t]here is an alternative remedy better than litigation in a federal court: a declaratory judgment action in an Ohio state court." *Id.* This alternative "is a superior remedy because it allows the parties to ask Ohio courts to adjudicate these novel state law issues in the first instance." *Id.* The court concluded that after balancing the factors, the interests of federalism required declining jurisdiction. *Id.* at *10.

Admiral appealed this ruling to the Sixth Circuit. *See Admiral Ins. Co. v. Fire-Dex LLC*, No. 22-3992, 2023 WL 3963623 (6th Cir. 2023) ("*Admiral II*"). The Sixth Circuit agreed with the district court's analysis of the *Grand Trunk* factors, noting that the parties did not dispute the first three factors. *Id.* at *2-3. For the fourth factor, the Sixth Circuit agreed that this case "turns on a novel issue of Ohio insurance law." *Id.* at *3. The Sixth Circuit emphasized that "the district court was asked to 'declare' how Ohio law would interpret contractual language addressing liability to non-employees for PFAS exposure." *Id.* "Doing so without any relevant state-imposed guardrails would make its journey a riskier one." *Id.* As such, the Sixth Circuit held that it was "not an abuse of discretion to hold that these issues should be decided first by Ohio state courts." *Id.* The Sixth Circuit affirmed the lower court's holding.

### B.  Procedural History

On July 21, 2023, Fire-Dex filed a complaint in state court, seeking declaratory judgment that "Admiral is obligated to (a) defend Fire-Dex in the Underlying Lawsuits, and (b) indemnify Fire-Dex for any damages Fire-Dex is legally obligated to pay to the Underlying Plaintiffs in the Underlying Lawsuits."  (Doc. No. 1-1 at 20, ¶ 48.)  Fire-Dex's complaint also includes one count for breach of contract and one count for bad faith.  (*Id.* at 20-22, ¶¶ 49-63.)  Specifically, Fire-Dex's breach of contract claim alleges that "Admiral has breached its obligations to Fire-Dex by refusing to defend and/or indemnify Fire-Dex in the underlying lawsuits" and seeks specific performance.  (*Id.* at 20, ¶ 52; *id.* at 21, ¶ 54.)  For its bad faith claim, Fire-Dex alleges that Admiral "failed to conduct a good faith investigation into Fire-Dex's claims" before denying coverage.  (*Id.* at 21, ¶ 58.)  Consequently, Fire-Dex "incur[red] unnecessary expenses in challenging this decision" and was forced "to defend against" Admiral's declaratory judgment action.  (*Id.*)  Fire-Dex's complaint seeks declaratory judgment, as well as compensatory and punitive damages.  (*Id.* at 22-23.)

On August 18, 2023, Admiral removed to this Court.  (Doc. No. 1.)  Admiral answered and asserted four counterclaims on August 25, 2023.[2]  (Doc. No. 6.)  On September 15, 2023, Fire-Dex answered the counterclaims.  (Doc. No. 7.)  Also on September 15, 2023, Fire-Dex filed a motion to remand.  (Doc. No. 8.)  Admiral opposed this motion on October 13, 2023.  (Doc. No. 9.)  On October 27, 2023, Fire-Dex filed its reply.  (Doc. No. 10.)[3]

---

[2] Admiral's four counterclaims are identical to the declaratory judgment claims Admiral sought in the case before Judge Barker.  (*Compare* Doc. No. 6 at 880-84 *with Admiral Ins. Co. v. Fire-Dex*, 1:22-cv-01087, Doc. No. 1 at 4-7, ¶¶ 26-59.)

[3] On November 10, 2023, Admiral filed a motion to strike the *collateral estoppel* arguments in Fire-Dex's reply or in the alternative a motion for leave file a sur-reply.  (Doc. No. 11.)  On

II.    **Legal Standard**

"[F]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  Put differently, federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  "There are two types of subject matter jurisdiction bestowed upon the federal district courts: federal question jurisdiction and diversity jurisdiction." *White v. Barrington Golf Club*, No. 5:22-cv-130, 2023 WL 4133979, at *2 (N.D. Ohio June 22, 2023) (internal quotations omitted).

To establish diversity jurisdiction, a complaint must meet two requirements.  First, "the matter in controversy must exceed[] the sum or value of $75,000."  28 U.S.C. § 1332(a). Second, the controversy must be "between citizens of different states."  28 U.S.C. § 1332(a)(1). For the second requirement, a complaint must demonstrate "complete diversity" of citizenship, meaning no plaintiff resides in the same state as any defendant.  *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005).

A case that was originally filed in state court may be removed to a federal district court under 28 U.S.C. § 1441(a) "only if the district court has original jurisdiction over the matter." *Raymond St. Partners, LLC v. Cincinnati Indem. Co.*, No. 1:23 CV 468, 2023 WL 3074796, *1 (N.D. Ohio. Apr. 25, 2023).  When considering removal, "the removal statue should be strictly construed and all doubts resolved in favor of remand."  *Eastman v. Marine Mech. Corp.*, 438 F.3d 544-549-50 (6th Cir. 2006); *see also Hrivnak v. NCO Portfolio Mgmt., Inc.*, 723 F.Supp. 3d 1020, 1022 (N.D. Ohio 2010) ("Removal jurisdiction raises significant federalism concerns, and

---

November 17, 2023, Fire-Dex opposed Admiral's motion to strike or file a sur-reply.  (Doc. No. 12.)  The Court denied Admiral's motion in a separate, contemporaneously filed order.

for this reason, federal courts must strictly construe such jurisdiction.") (citing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)).  On a motion for remand, "the defendant bears the burden of establishing that removal was proper." *Long v. Bando Mfg. of America, Inc.*, 201 F.3d 754, 757 (6th Cir. 2000).

### III.  Discussion

In its motion to remand, Fire-Dex does not contest that this case meets the requirements for diversity jurisdiction.  (*See* Doc. No. 8.)  Instead, Fire-Dex argues that two doctrines, *Thibodaux* and *Burford* abstention, justify abstaining in this case.  The Court will address each of these doctrines and the appropriate course of action should the Court abstain below.

#### A.  Abstention

"District Courts have a 'virtually unflagging' obligation to exercise the jurisdiction given to them." *Vary v. City of Cleveland*, 206 F.Supp. 3d 1273, 1277 (N.D. Ohio 2016) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)).  Accordingly, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813.  Abstaining is justified "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.*

##### 1.  *Thibodaux* Abstention

*Thibodaux* abstention is based on two Supreme Court decisions from 1959: *Louisiana Power & Light Company v. City of Thibodaux*, 360 U.S. 25 (1959) and *Allegheny County v. Frank Mashuda Company*, 360 U.S. 185 (1959).  *See Vary*, 206 F.Supp. 3d at 1277.  Both *Thibodaux* and *Mashuda* discussed whether eminent domain proceedings based on diversity jurisdiction presented "unique justifications for abstention." *Id.* at 1278.

8

In *Thibodaux*, the Supreme Court found that abstention was appropriate because of the unanswered questions of law regarding the city's use of eminent domain.  360 U.S. at 30. Because interpreting state law would "apportion[] government powers between City and State," the issue in *Thibodaux* was "intimately involved with the sovereign prerogative."  *Id.* at 28.  This interaction with a state's sovereign prerogative weighed in favor of abstention.  The Supreme Court held that state courts should address the issue because "[i]nformed local courts may find meaning not discernible to the outsider."  *Id.*

In contrast, the Supreme Court found that "the law at issue in *Mashuda* was clear" that the county's use of eminent domain was improper.  *Vary*, 206 F.Supp.3d at 1278 (citing *Mashuda*, 360 U.S. at 187).  Accordingly, the issue in *Mashuda* "was no more 'mystically involved with the sovereign prerogative' than other types of suits."  *Id.* (quoting *Mashuda*, 360 U.S. at 192).  The Supreme Court concluded "[b]ecause the state law was clear, federal court did not need to abstain from adjudicating the case."  *Id.*

Reading these cases together, to find that *Thibodaux* abstention applies, the Court must find "there are (a) uncertain questions of state law and (b) an important state interest that is intimately involved with the government's sovereign prerogative beyond the mere fact of invoking" a specific area of law.  *Id.* at 1278-79.

Fire-Dex argues that *Thibodaux* abstention is appropriate because the Sixth Circuit has already held that "the core issues in this case involve novel and unsettled issues of state law which implicate an important state interest."  (Doc. No. 8 at 907.)  Fire-Dex emphasizes that as a federal court sitting in diversity, the Court would be "mak[ing] an educated guess as to what the state courts would do."  (*Id.* at 906 (citing *EQT Gathering, LLC v. A Tract of Property Situated in Knott Cnty., Ky.*, No. 12-cv-58, 2012 WL 4321119, *4 (E.D. Ky. Sept. 18, 2012)).)  Fire-Dex

also asserts that Ohio has a strong interest in "regulating insurance and resolving the applicability of an occupational disease exclusion to PFAS-related illnesses suffered by [Fire-Dex's] non-employees." (*Id.* at 907.)

Admiral contends that *Thibodaux* does not apply simply because the Court is faced with a novel question of state law. (Doc. No. 9 at 931.) Admiral likens the issues of state law in this case to *Mashuda* because the Court need only "determine whether [the] underlying plaintiffs suffer from an 'occupational disease.'" (*Id.* at 932.) Admiral asserts that making this decision does not implicate *Thibodaux* abstention because the declaratory judgment claims do not seek "to limit or prohibit the exercise of Ohio's sovereign power in any way." (*Id.*)

When considering virtually identical claims, Judge Barker noted that "there are no cases in which any state court concluded that an occupational disease and/or pollution exclusion either, does or does not obligate an insurer to defend and/or indemnify an insured for PFAS related claims." *Admiral I*, 2022 WL 16552973 at *7. Judge Barker also disagreed with Admiral's assertion that the court "could reasonably predict how Ohio state courts would rule on this issue by relying on the definition of 'occupational disease'" because "[t]his term has been developed in the context of worker's compensation cases" not "an insurance policy exclusion." *Id.* at *8. Likewise, the Sixth Circuit noted that "[t]his dispute turns on a novel issue of Ohio insurance law: are illnesses arising from exposure to PFAS in a manufacturer's finished products an 'occupational disease' under Ohio law? No party cites an Ohio decision addressing the issue, nor are we aware of one." *Admiral II*, 2023 WL 3963623 at *3. The parties have not directed the Court to any state court opinions that postdate the Sixth Circuit's opinion. Therefore, Fire-Dex's declaratory judgment claim and Admiral's declaratory judgment counterclaims still present uncertain questions of state law.

10

As for the second requirement, the Sixth Circuit's ruling in *Admiral II* provides some guidance. There, the Sixth Circuit stated that "[b]y and large, insurance rules and regulations are reserved to the states for crafting." *Id.* (citing McCarran-Ferguson Act, 15 U.S.C. § 1012(b) and *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 815 (6th Cir. 2004) (explaining that "'state courts are best situated' to regulate insurance companies operating within their borders, including by interpreting insurance contracts")). Accordingly, the Sixth Circuit held "[i]t is thus no surprise that we consistently counsel district courts to decline jurisdiction when asked to decide unresolved insurance coverage issues." *Id.*

Other Sixth Circuit precedent makes clear that "issues of 'insurance contract interpretation are questions of state law with which the [] state courts are more familiar and, therefore better able to resolve.'" *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 273 (6th Cir. 2007) (citing *Bituminous*, 373 F.3d at 815); *see also Mass. Bay Ins. Co.*, 759 Fed. App'x at 440 ("In general, states are in a better position to resolve insurance issues governed by state law."). Though neither the Sixth Circuit nor the Supreme Court have used the term "sovereign prerogative" to describe a state's interest in regulating insurance,[4] the Sixth Circuit has held that "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Scottsdale*, 513 F.3d at 561 (quoting *Bituminous*, 373 F.3d at

---

[4] District courts outside of this Circuit have held that regulation of insurance is a sovereign prerogative of the states. *See Whitmire v. S. Farm Bureau Life Ins. Co.*, 538 F.Supp.3d 591, 599 (E.D.N.C. 2021) ("Regulation of the insurance industry is a sovereign prerogative that Congress has expressly reserved to the states because of the states' fundamental interests in protecting their citizens." (internal citations omitted)); *Columbus Life Ins. Co. v. Wells Fargo Bank*, N.A., 505 F.Supp.3d 609, 619 (E.D.N.C. 2020) (same); *Employers' Innovative Network, LLC v. Bridgeport Benefits, Inc.*, No. 5:18-cv-01082, 2019 WL 539075, at *7 (S.D.W. Va. Feb. 11, 2019) ("[T]he Court acknowledges that the insurance industry falls well within the core prerogative of West Virginia and is currently subject to an existing detailed state statutory scheme.").

815); *see also Sec. & Exch. Comm'n v. Variable Annuity Life Ins. Co. of America*, 359 U.S. 65, 68-69 (1959) ("When the States speak in the field of 'insurance,' they speak with the authority of a long tradition.  For the regulation of 'insurance,' though within the ambit of federal power has traditionally been under the control of the States.").

Taking guidance from the Sixth Circuit, the scope of the Policies' exclusions is an important state interest that is intimately involved with Ohio's sovereign prerogative to regulate insurance contracts.  Accordingly, both requirements for *Thibodaux* abstention are met and the Court declines jurisdiction over the declaratory judgment claims in this case.

### 2. *Burford* Abstention

Another abstention doctrine comes from *Burford v. Sun Oil Company*, 319 U.S. 315 (1943)*.  In *Burford*, the Supreme Court discussed federal review of state administrative orders regarding drilling permits.  *Id.* at 317.  To address the complex nature of oil rights, Texas created a state-run system that allowed administrative and judicial specialists to adjudicate disputes.  *See id.* at 326.  The Supreme Court found that federal interference could frustrate the purpose of Texas's administrative system, and dismissal for lack of subject-matter jurisdiction was appropriate.  *Id.* at 332.

In *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996), the Supreme Court described *Burford* abstention as "an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it."  *Id.* at 727-28.  *Quackenbush* held that *Burford* abstention is "a matter of equitable discretion reflecting principles of federalism and comity" that requires balancing the federal interest in retaining jurisdiction against the independence of state action.  *See id.* at 728.  This "balance only rarely favors abstention."  *Id.*

In *New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350 (1989)

("*NOPSI*"), the Supreme Court further explained that *Burford* abstention only applies where there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar" or "if adjudication in the federal forum would disrupt the state's efforts to establish a coherent policy regarding matters of substantial public concern."  *Id.* at 361.  The presence of a state administrative process or the "'potential for conflict' with state regulatory law or policy" are not sufficient to invoke *Burford* abstention.  *See Saginaw Housing Comm'n v. Bannum, Inc.*, 576 F.3d 620, 626 (6th Cir. 2009) ("*Burford* abstention often protects 'complex state administrative processes from undue federal interference.'  That said, 'it does not require abstention wherever there exists such a process.'") (quoting *NOPSI*, 491 U.S. at 361).  "The key question is whether an erroneous federal court decision could impair the state's effort to implement its policy."  *Id.* (quoting *Ada-Cascade Watch Co., Inc. v. Cascade Res. Recovery, Inc.*, 720 F.3d 897, 903 (6th Cir. 1983)).

When these conditions are met, "*Burford* says that a district court should stay its hand until the state courts have had an opportunity to weigh in on the matter."  *Gray v. Bush*, 628 F.3d 779, 784 (6th Cir. 2010) (citing *NOPSI*, 491 U.S. at 361).  *Burford* "thus tells federal courts *when* to exercise discretion (by considering whether a federal ruling might wreak havoc on a sensitive yet indeterminate area of state policy) and *how* to exercise that discretion (by avoiding immediate resolution of the state law issue)."  *Id.* (emphasis in original).  In sum, *Burford* abstention applies when there is a difficult question of state law that bears "on policy problems of substantial public import" that "transcends the case at hand" and "when conflicting state and federal rulings on the question would be disruptive of state efforts to establish a coherent policy."  *Id.* at 784 (citing *NOPSI*, 491 U.S. at 361).

Fire-Dex argues that the "issue in this case goes beyond posing 'difficult questions of

13

state law.'" (Doc. No. 10 at 958.) Fire-Dex highlights that Judge Barker and the Sixth Circuit found this issue "important enough to respect the boundaries of federalism and comity to decline jurisdiction to hear." (*Id.* at 958-59.) Specifically, Fire-Dex claims this issue bears on important policy problems because a "decision in this case will affect Fire-Dex's rights and obligations in each of the underlying lawsuits in which it has been named as a defendant (currently 113 cases and thousands of claimants)," "expose Fire-Dex to significant gaps in insurance coverage and potentially substantial damages," and "affect each of Fire-Dex's other primary insurers." (*Id.* at 959.) According to Fire-Dex, Admiral's interpretation of the occupational disease exclusion "would effectively eviscerate nearly all coverages available to a manufacturer when a claim is brought by an end-user of its product." (*Id.*)

Admiral argues that *Burford* abstention does not apply merely because Ohio regulates insurance or an issue of state law is novel. (Doc. No. 9 at 932-35.) Instead, Fire-Dex must show that ruling on this case will disrupt Ohio's regulation of insurance. (*Id.* at 933.) Admiral "concedes that the Ohio Department of Insurance regulates state insurance law" but states that this case "does not challenge any state administrative or regulatory action[.]" (*Id.* at 934.) Moreover, Admiral asserts that as a surplus lines insurer, it is "not subject to direct regulation by the state." (*Id.*) Admiral highlights that Fire-Dex has not identified "any state administrative, regulatory, or civil proceeding that would create a conflict requiring a stay." (*Id.*)

As discussed above, Judge Barker found that this case involves an issue of unanswered state law and noted "the dearth of caselaw involving PFAS and the instant exclusions." *Admiral I*, 2022 WL 16552973, at *9. In addition to the lack of precedent, Judge Barker also found that federal courts are "not in a position to reasonably predict how Ohio state courts will answer the questions in this case." *Id.* at *8. The Sixth Circuit referred to the questions in this case as

14

"untouched legal terrain" and noted the ack of "Ohio precedent interpreting the term

'occupational disease'" in a similar context.  *Admiral II*, 2023 WL 16552973 at *4.  Because the

Sixth Circuit found that declaring "how Ohio law would interpret contractual language

addressing liability to non-employees for PFAS exposure" in the absence of "any relevant state-

imposed guardrails" would be "risk[y]," the first prong of *Burford* abstention is met.  *Id.* at *3.

For the second prong, removal based on diversity jurisdiction places this action "within

one of those 'classes of cases' to which a 'strong federal interest' attaches."  *Cleveland Housing*

*Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 562 (6th Cir. 2010) ("*CHRP*")

(quoting *Quackenbush*, 517 U.S. 728).  "[T]he importance of diversity jurisdiction is particularly

strong [] where the state law claims (a) are of intense local concern, (b) are asserted against not

just citizens of different states, but affiliates of manifestly 'foreign' (i.e. German) corporations,

and (c) would otherwise be adjudicated by a locally-elected municipal judge."  *Id.* at 563-64.

"The state interests that may be deemed to outweigh the federal interests must stem from

the need to maintain uniformity in the treatment of an essentially local problem, and the need to

retain local control over difficult questions of state law bearing on policy problems of substantial

public import."  *Id.* at 564 (citing *Quackenbush*, 517 U.S. at 728)  In *Saginaw Housing*, the Sixth

Circuit held "[i]n most cases in which we have applied *Burford*, the creation of an agency to

promulgate and administer the state policy has served as evidence of the state's level of concern

and of its desire for uniform application of the policy."  576 F.3d at 627 (citing *Adrian Energy*

*Assocs. v. Mich, Pub. Serv. Comm'n*, 481 F.3d 414, 424 (2007)).  However, the fact that

"[f]ederal interference in this local matter may disrupt the state's efforts to have [certain] cases

uniformly adjudicated" is insufficient to find that the state has a strong cognizable interest in

state court adjudication.  *CHRP*, 621 F.3d at 568.  When balancing the federal and state interests,

*Cleveland Housing Renewal Project* warns against "undervalu[ing] the important of the federal interest at stake and overvalu[ing] the strength of the state interests."  *Id.*

For the strength of the federal interest in adjudicating this case, the parties have not addressed whether this issue is of "intense local concern" outside of the immediate impact on Fire-Dex and its insurers.  (Doc. No. 10 at 958-59.)  Admiral is not a "manifestly 'foreign' corporation," but merely a citizen of different states.  (Doc. No. 1-1 at 11, ¶ 2.)  This case would otherwise be adjudicated by a judge in the Medina Court of Common Pleas, which is an elected position.  Ohio Const. Art. IV, § 6.  Accordingly, this case presents one additional factor that makes diversity jurisdiction "particularly strong."  *See CHRP*, 621 F.3d at 563 ("Additional federal interests make an already strong federal interest stronger, but their absence does not render an already strong federal interest weak.").

For the state's interest, Ohio has created the Department of Insurance, evidencing its level of concern and desire for a uniform application of Ohio's insurance policies.  Moreover, as discussed with reference to *Thibodaux* abstention, case law establishes that regulating insurance is an important state interest.  Accordingly, Ohio does have some cognizable interest in having a state court adjudicate Fire-Dex and Admiral's declaratory judgment claims.

Weighing these factors, Ohio's interest in insurance regulation is insufficient to justify the application of *Burford* abstention.  Fire-Dex has not identified how this Court's interpretation of the Policies' exclusions would disrupt an effort undertaken by Ohio to establish a coherent policy regarding occupational disease, PFAS exposure, and insurance coverage.  Without this information, Fire-Dex has not shown that this case constitutes "such extraordinary circumstances" that "come within the narrow exception to the exercise of federal jurisdiction" created by *Burford* abstention.  *Id.* at 568.

Ohio's interests do not outweigh the strong federal interest in this case such that *Burford* abstention is appropriate in this case.

### B.  Remanding the Entire Case or Severing Claims

Having determined that *Thibodaux* abstention applies to the declaratory judgment claims and counterclaims in this case, the Court must next determine whether to sever and remand only those claims or remand the entire case.  The parties dispute whether the Court has the authority to take either action.  (*See* Doc. No. 8 at 909-12; *see also* Doc. No. 9 at 935-41.)

### 1.  Remanding the Entire Case

Fire-Dex argues that Justice Kennedy's concurrence in *Quackenbush* allows the Court to remand the entirety of this case, including Fire-Dex's breach of contract and bad faith claims. (Doc. No. 8 at 909-10; Doc. No. 10 at 960.)  Fire-Dex's argument relies on Justice Kennedy's observation that "abstention, including dismissal, is a possibility that may yet be addressed in a suit for damages, if fundamental concerns of federalism require us to face this issue."  (Doc. No. 8 at 909-10 (citing *Quackenbush*, 517 U.S. at 734).)  Fire-Dex argues that because "the Sixth Circuit held that important issues of federalism and comity required federal courts to decline jurisdiction," the "unique procedural circumstances and the Sixth Circuit's prior ruling provide a basis to remand the entirety of this case."  (*Id.*; Doc. No. 10 at 960.)  Fire-Dex also emphasizes that its decision to bring claims for damages in this suit was a result of its inability to "split these claims into separate actions or else [] risk the application of collateral estoppel."  (Doc. No. 8 at 911; *see also* Doc. No. 10 at 961.)

The Sixth Circuit has not taken the same view of Justice Kennedy's concurrence in *Quackenbush*.  In *Gray*, the Sixth Circuit held that "[i]n the context of a complaint seeking both equitable relief and money damages [] a federal court's discretion to abstain from exercising

jurisdiction does not extend so far as to permit a court to dismiss or remand, as opposed to stay, an action at law." 628 F.3d at 785 (internal quotations omitted) (quoting *Superior Beverage Co., Inc. v. Schieffelin & Co.*, 448 F.3d 910, 913-14 (6th Cir. 2006)). Accordingly, other judges in this district have not remanded an entire case where it includes claims for damages. *See Torre Rossa, LLC v. Liberty Mut. Ins.*, No. 1:20 CV 1095, 2020 WL 9599681, *5 (N.D. Ohio Nov. 18, 2020) ("[C]ourts in this circuit have made clear, when a complaint includes damages claims as well as a request for declaratory relief, the exercise of jurisdiction over the damage claims is mandatory if all the jurisdictional requirements of 28 U.S.C. § 1332(a) are met with respect to those claims."); *Mikmar, Inc. v. Westfield Ins. Co.*, No 1:20-cv-01313, 2020 WL 6127912, *4 (N.D. Ohio Oct. 19, 2020) ("In this case, the Court cannot remand the entire suit to state court. At most, the Court can decline to exercise jurisdiction over the declaratory relief claim, remand it to an Ohio court, and stay the proceedings in this Court for the breach of contract and covenant of good faith claims."); *Equity Planning Corp. v. Westfield Ins. Co.*, 1:20-CV-01204, 2020 WL 5909806, *4 (N.D. Ohio Oct. 6, 2020) (holding "the Court views the presence of [plaintiff's] monetary damages claims to be 'dispositive of the motion to remand'" and "even if this Court chose not to exercise discretion over [plaintiff's] Declaratory Judgment claim, this Court must still exercise jurisdiction over [plaintiff's] breach of contract claim and could not remand the entire matter back to state court").

Because Fire-Dex's complaint includes claims for money damages, the Court cannot remand the entire case to state court under the Sixth Circuit's holding in *Gray*, 628 F.3d at 785.

### 2. Severing Claims

The parties likewise do not agree whether the Court has the authority to sever and remand individual claims in this action. (*Compare* Doc. No. 8 at 909-11 and Doc. No. 10 at 959-60 *with*

Doc. No. 9 at 935-41.)

Fire-Dex argues the Court is clearly authorized under *Quackenbush* to remand the declaratory judgment claim and stay the damages claims pending final judgment in Ohio state courts. (Doc. No. 8 at 910.) Fire-Dex further argues that courts "regularly bifurcate bad faith claims from declaratory judgment and breach of contract claims in insurance coverage cases." (Doc. No. 10 at 961 n.2.) Therefore, Fire-Dex argues "judicial economy" is not relevant because "the bad faith claim would not be addressed until the coverage issue is decided." (*Id.*)

Admiral argues that under the relevant removal statute and controlling precedent, the Court lacks the authority to sever the claims in this case. (Doc. No. 9 at 935-39.) According to Admiral, the Sixth Circuit "strongly suggests that a court may not sever and remand declaratory claims," which is "in line with six other federal circuits." (*Id.* at 939-41.)

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, counsel, and for litigants." *Gray*, 628 F.3d at 785 (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). The Court will assess whether the authorities Admiral cites prevent the Court from exercising its power to stay proceedings.

### a. 28 U.S.C. § 1441

The first authority Admiral cites is the removal provisions in 28 U.S.C. § 1441(c). Admiral argues that before 28 U.S.C. § 1441(c) was amended in 1990, district courts had discretion to sever and remand claims that did not meet original jurisdiction after removal, in both federal question and diversity jurisdiction cases. (Doc. No. 9 at 935.) According to Admiral, after 1990, Section 1441(c)(2) only allows a district court to sever and remand non-removable claims "when the removing party invokes § 1331 federal question jurisdiction." (*Id.*

at 937.)  Admiral relies on statutory construction principles that state "the expression of one thing means the exclusion of another" to highlight that Section 1441(c) discusses severing in federal question cases but not diversity cases.  (*Id.*)  Admiral cites several out-of-circuit district court cases that have adopted this view of Section 1441(c). (*Id.* at 938-39.)

Fire-Dex argues that "the Supreme Court, the Sixth Circuit, and the Northern District of Ohio have all clearly approved of a district court's decision to stay federal proceedings and remand state claims when exercising its authority under abstention doctrines."  (Doc. No. 10 at 961.)  According to Fire-Dex, Section 1441(c) is "applicable only to actions where 'non-removable claims or causes of action' are joined with a claim that is otherwise removable."  (*Id.* at 962.)  Fire-Dex argues that the 1990 amendment did not alter the scope of Section 1441 and "never addressed the situation where an action was removed which contained claims which were all removable."  (*Id.*)  Fire-Dex further argues that applying Admiral's interpretation of Section 1441(c) would amount to "statutory abrogation of the decisions in *Thibodaux* and *Quackenbush* which expressly permit district courts to exercise their discretion to stay legal claims for money damages and remand (i.e., sever) declaratory judgment claims involving important issues of state law."  (*Id.* at 963.)

The four out-of-circuit district court cases Admiral cites in support of its interpretation of Section 1441(c) are unpersuasive.  (*See* Doc. No. 9 at 938-39.)  These cases involve non-removable workers' compensation claims, coupled with claims that satisfied the requirements for diversity jurisdiction.  *See Mayfield v. Shelley's Elec. Serv. Inc.*, 582 F.Supp.3d 1103 (N.D. Ala. 2022) (declining to sever workers' compensation and personal injury claims); *Jackson v. Wal-Mart Stores Tex., LLC*, 925 F.Supp.3d 810 (N.D. Tex. 2013) (declining to sever workers' compensation from race discrimination and retaliation claims); *Vinson v. Schneider Nat.*

*Carriers, Inc.*, 942 F.Supp. 2d 630 (N.D. Tex. 2013) (declining to sever workers' compensation claims from disability discrimination, disability harassment, and disability retaliation claims); *Burris v. Zale Del., Inc.*, No. 09-6099, 2009 WL 3762987 (W.D. Mo. Nov. 10, 2009) (declining to sever workers' compensation claims from retaliation claims). In each case, the district court declined to sever the non-removable claims and remanded the entire case.

Unlike these four cases, all of Fire-Dex's claims are removable, including its claims for damages. (*See* Doc. No. 1 at 2.) These cases do not discuss jurisdiction over declaratory judgment claims, abstention, or federalism, nor do they stand for the proposition that Section 1441(c) denies district courts the power to sever claims in *all* diversity jurisdiction cases.

At most, Admiral has shown that some district courts outside this Circuit view Section 1441(c) as prohibiting courts from severing claims when a plaintiff brings both non-removable claims and claims that meet the requirements for diversity jurisdiction. This argument falls short of establishing that Section 1441(c) prevents this Court from severing Fire-Dex and Admiral's declaratory judgment claims and counterclaims from Fire-Dex's removable breach of contract and bad faith claims.

### b. Sixth Circuit Case Law and Other Circuit's Approaches

Admiral interprets *Adrian Energy* as the Sixth Circuit "strongly intimat[ing] that it will not allow claims to be severed." (Doc. No. 9 at 939.) In *Adrian Energy¸* the Sixth Circuit considered whether the district court correctly abstained from exercising jurisdiction over the plaintiffs' declaratory judgment claims. 481 F.3d at 416. The Sixth Circuit held that under *Burford*, the district court's decision not to exercise jurisdiction was correct. *Id.* at 424-25. Admiral contends that the Sixth Circuit also "noted its decision would be different if damages were sought in addition to declaratory relief." (Doc. No. 9 at 939.) Specifically, Admiral

highlights the Sixth Circuit's observation that:

> When a plaintiff seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court must address, then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources.

(*Id.* (citing *Adrian Energy*, 481 F.3d 422).)  Admiral further emphasizes that four Northern District of Ohio cases "have followed that rationale and refused to dismiss or stay declaratory judgment when damages are sought."  (*Id.* at n. 13 (citing cases).)

Admiral also argues that *Adrian Energy* is consistent with rulings by six other federal circuit courts of appeal.  (*Id.* at 939-40)  The Second, Fourth and Fifth Circuits apply a "bright line" test that "requires jurisdiction if any damages claim properly invokes jurisdiction."  (*Id.*)  The Third, Seventh and Ninth Circuits apply an "independent claims test" that requires jurisdiction "if a damages claim is independent of a declaratory judgment claim."  (*Id.* at 940.)  Accordingly to Admiral, the claims in this case meet both tests.  Admiral acknowledges that the Eighth Circuit applies a different test that discusses "whether the 'essence of the lawsuit' is for damages or declaratory relief" and allows a court to abstain from jurisdiction if "breach of contract and declaratory relief are the same."  (*Id.*)  Admiral argues that the Sixth Circuit rejected this approach.  (*Id.* at 940-41 (citing *Gray*, 628 F.3d at 785).)

Fire-Dex argues that *Adrian Energy* and its progeny did not announce a "hard-and-fast rule" that declaratory judgment and damages claims must be litigated together in federal court.  (Doc. No. 10 at 964.)  Fire-Dex emphasizes that "the Sixth Circuit has already ruled that federal courts lack jurisdiction over the declaratory judgment claims raised in this case" and therefore "the issue of the proper forum to decide the novel question of Ohio insurance law present in this case has already been decided."  (*Id.*)

Fire-Dex also argues that the Sixth Circuit has not adopted any test and has chosen to

allow "district courts to develop their own standards[.]" (*Id.*)  Fire-Dex highlights one such

district court case where the Western District of Michigan "noted the complex nature of the

insurance coverage dispute and the implication on ancillary legal issues in declining to exercise

jurisdiction and remanding both the declaratory judgment and legal claims to state court." (*Id.*

(citing *Pupp v. Ill. Union Ins. Co.*, No. 1:09-cv-532, 2010 WL 1258179 (W.D. Mich. Mar. 29,

2010).)  There, the court noted that the plaintiff's non-declaratory claims "emanate from the

declaratory matter at issue and are not appropriately considered as existing independently of

plaintiff's request for a declaratory relief, such that this Court's jurisdiction is mandatory."

*Pupp*, 2010 WL 1258179 at *4.  Fire-Dex argues that its breach of contract and bad faith claims

"clearly 'emanate' from its declaratory judgment claim and would likely not survive if Admiral

prevails on its interpretation of the policy exclusion."  (Doc. No. 10 at 965.)

As Admiral acknowledges, the portion of *Adrian Energy* it cites is dicta.  (*See* Doc. No. 9

at 939.)  In *Adrian Energy*, the Sixth Circuit did not consider a complaint seeking both

declaratory relief and damages.  481 F.3d at 422.  Instead, the Sixth Circuit merely observed that

if a plaintiff did seek both types of relief, there would be little benefit to declining jurisdiction

over the declaratory judgment claims and continuing to address the other claims.  *Id.*  In *Gray*,

the Sixth Circuit explained that while a court cannot "dismiss or remand an action when the

relief sought is not discretionary," that limitation "does not strip a district court of another form

of *Burford* discretion: the option of staying the federal proceedings until the state court resolves

the difficult question of state law bearing on policy problems of public import."  *Id.* (internal

quotations and alterations omitted).  "[O]nce any such questions are resolved or if resolution of

the state law question for some reason is not promptly sought and obtained within a reasonable

time, the district court, having retained complete control of the litigation, should proceed to the

merits[.]"  *Id.* at 787 (citing *Thibodaux*, 360 U.S. at 29).

Other judges in this district have likewise observed that severing claims is a potential "alternative remedy," though it may not be the most efficient option.  *See Mikmar*, 2020 WL 6127912 at *4 (holding that while "declin[ing] to exercise jurisdiction over the declaratory relief claim, remand it to an Ohio court, and stay the proceedings in this Court for the breach of contract and covenant of good faith claims," "may be an 'alternative remedy,' it is not more efficient"); *Torre Rossa*, 2020 WL 9599681 at *5 (same); *Ceres Enters., LLC v. Travelers Ins. Co.*, No. 1:20-CV-01925, 2021 WL 110789 at *8 (N.D. Ohio Jan. 12, 2021) (holding that the "Court could stay the breach of contract and bad faith claims and remand the declaratory judgment claim" but "[s]uch an approach presents obvious inefficiencies compared to adjudicating all three claims in a single action"); *Family Tacos, LLC v. Auto Owners Ins Co.*, 5:20-cv-01922, 2021 WL 110797, at *7 (N.D. Ohio Jan. 12, 2021) (same).[5]

Admiral's arguments cast doubt on whether severing claims would be efficient, but they do not show that the Court lacks the authority to stay the damages claims while an Ohio state court determines the issue of insurance coverage.  To be sure, *Adrian Energy* noted that this approach "would not save any judicial resources" and "frustrates" the "benefit derived from exercising discretion not to grant declaratory relief."  481 F.3d at 422.  However, this option presents its own benefits.  Specifically, by severing the declaratory judgment claims and counterclaims, the Court follows the Sixth Circuit's previous ruling that Ohio state courts should

---

[5] Admiral cites these cases in support of its argument that have judges in this District have "refused to dismiss or stay declaratory judgment when damages are sought."  (Doc. No. 9 at 939 n. 13.)  Admiral also cites *Farris v. State Farm Ins. Co.*, 617 F.Supp. 2d 654 (N.D. Ohio 2008) in support of this argument.  (*Id.*)  In *Farris*, the Court did not acknowleddge the possibility of severing claims.  *Id.* at 659.  However, the court also did not face a motion to remand and neither party discussed abstention or federalism concerns.  *Id.*  Therefore this case is of limited utility for the Court's analysis.

rule on the scope of the policy exclusions first.  *See Admiral II*, 2023 WL 3963623 at * 3; *see also Admiral I*, 2022 WL 16552973 at *9.  Because the issues in this case are identical to the ones before the Sixth Circuit, the Court reaches the same conclusion and abstains from exercising jurisdiction over the claims here.  *See Admiral II*, 2023 WL 3963623 at * 3.

Using its inherent power to control the causes on its docket, the Court remands Fire-Dex's declaratory judgment claim and Admiral's declaratory judgment counterclaims and stays Fire-Dex's breach of contract and bad faith claims.  *See Gray*, 628 F.3d at 785.  Though this option necessitates two separate legal proceedings, the Sixth Circuit has held that "an Ohio declaratory judgment action was a better alternative remedy" to this Court retaining jurisdiction. *Admiral II*, 2023 WL 396323 at *3.

### IV.   <u>Conclusion</u>

Fire-Dex's declaratory judgment claim and Admiral's declaratory judgment counterclaims are REMANDED to the Medina County Court of Common Pleas.  Fire-Dex's remaining claims are STAYED until the state court has addressed the declaratory judgment claims and counterclaims.  The parties are hereby ORDERED to submit a joint status report 120 days from the date of this Memorandum Opinion and Order advising of the status of the state case.


**IT IS SO ORDERED.**


Date:  August 9, 2024                                 BRIDGET MEEHAN BRENNAN
                                                      UNITED STATES DISTRICT JUDGE